## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Crim. No.  03-20122-02-KHV |
| v. | ) | |
| | ) | Civil No. 05-3226-KHV |
| JOHNATHAN C.F. ELLIS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's timely-filed <u>Motion To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody</u> (Doc. #77).[1]  For reasons stated below, the Court overrules defendant's motion.

### Factual Background

On September 18, 2003, a grand jury returned a seven-count indictment which, in part, charged

_____

[1]       Section 2255 provides a one-year period of limitation for motions brought under that section.  28 U.S.C. § 2255.  The limitation period runs from the latest of:

(1) the date on which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Because defendant did not file a direct appeal, his conviction was final on May 28, 2004 – ten days after judgment was entered.  Accordingly, his motion filed on May 13, 2005 is timely.

Johnathan C.F. Ellis with conspiracy to possess with intent to distribute methamphetamine, possessing with intent to distribute methamphetamine, possessing a firearm in furtherance of a drug trafficking crime, opening and maintaining a place for distributing methamphetamine, and possessing a firearm after having been convicted of a felony, all in violation of 21 U.S.C. §§ 841, 846, and 18 U.S.C. §§ 2, 922(g)(1), 924(c)(1)(A).  See Indictment (Doc. #1).  Defendant pled guilty to one count of opening and maintaining a place for distributing methamphetamine.  In the plea agreement, defendant agreed that the evidence would show as follows:

> Johnathan C.F. Ellis was living at 1026 S. 55th Street, Kansas City, Kansas, along with John Tidwell and they had been renting the duplex since January 2003.  On July 2, 2003, Tidwell purchased three "zones" (ounces) of methamphetamine for the purpose of distributing the drug from the residence.  On July 3, 2003, a search warrant was executed by law enforcement officers and they recovered 42 grams of actual methamphetamine. Ellis admits and acknowledges that he was knowingly maintaining the residence by paying the rent and that he knew that Tidwell was involved in the distribution of narcotics from the residence.

Plea Agreement ¶ 2.  In the plea agreement, defendant also agreed to waive his rights of appeal and collateral attack.  See Plea Agreement ¶ 11.

Defendant's total offense level was 27, with a criminal history category IV, resulting in a sentencing range of 100 to 125 months.  On May 14, 2004, the Court sentenced defendant to 100 months in prison.

On May 13, 2005, defendant filed a motion to vacate his sentence under 28 U.S.C. § 2255. Liberally construed, defendant's motion alleges that (1) the Court improperly enhanced his sentence two levels for the presence of a firearm and improperly determined his criminal history category, both in violation of Blakely v. Washington, 542 U.S. 296 (2004); (2) counsel was ineffective because he demanded that defendant plead guilty; (3) counsel was ineffective at sentencing because he did not object

to the firearm enhancement or criminal history category; (4) counsel was ineffective in negotiating the plea agreement because he did not inform defendant of the limits on the use of evidence in determining the firearm enhancement and criminal history category; and (5) counsel was ineffective because he did not consult defendant about an appeal.

<u>Analysis</u>

The standard of review of Section 2255 petitions is quite stringent.  The Court presumes that the proceedings which led to defendant's conviction were correct.  <u>See</u> <u>Klein v. United States</u>, 880 F.2d 250, 253 (10th Cir. 1989).  To prevail, defendant must show a defect in the proceedings which resulted in a "complete miscarriage of justice."  <u>Davis v. United States</u>, 417 U.S. 333, 346 (1974).  A hearing in a Section 2255 proceeding is not required unless (1) defendant alleges specific and particularized facts which, if true, would entitle him to relief and (2) the motion and the files and records of the case do not conclusively show that defendant is entitled to no relief.  <u>See</u> 28 U.S.C. § 2255; <u>United States v. Barboa</u>, 777 F.2d 1420, 1422-23 (10th Cir. 1985) (hearing not required unless "petitioner's allegations, if proved, would entitle him to relief" and allegations are not contravened by the record).

**I.      Procedural Bar – Waiver Of Collateral Challenges**

A knowing and voluntary waiver of the statutory right to appeal or to collaterally attack a sentence is generally enforceable.  <u>United States v. Chavez-Salais</u>, 337 F.3d 1170, 1172 (10th Cir. 2003); <u>United States v. Cockerham</u>, 237 F.3d 1179, 1181 (10th Cir. 2001), <u>cert. denied</u>, 534 U.S. 1085 (2002); <u>United States v. Hernandez</u>, 134 F.3d 1435, 1437 (10th Cir. 1998).  The Court applies a three-pronged analysis to evaluate the enforceability of such a waiver: (1) whether the disputed issue falls within the scope of the waiver; (2) whether defendant knowingly and voluntarily waived his rights; and (3) whether enforcing the

waiver would result in a miscarriage of justice. United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir.

2004) (en banc); see United States v. McMillon, No. 02-20062-01-JWL, 2004 WL 2660641 at *3 (D.

Kan. Nov. 19, 2004).

   A.  Scope of the Waiver

   To determine whether the disputed issue falls within the scope of the waiver, the Court begins with

the plain language of the plea agreement. United States v. Anderson, 374 F.3d 955, 957 (10th Cir. 2004);

Hahn, 359 F.3d at 1328. The Court construes the plea agreement according to contract principles and

based on what defendant reasonably understood when he entered his plea. United States v.

Arevalo-Jimenez, 372 F.3d 1204, 1206 (10th Cir. 2004). The Court strictly construes the waiver and

resolves any ambiguities against the government and in favor of defendant. Hahn, 359 F.3d at 1343.

   The plea agreement states in relevant part as follows:

   **11.**  **Waiver of Appeal and Collateral Attack.** Defendant knowingly and
voluntarily waives any right to appeal or collaterally attack any matter in connection with
this prosecution, conviction and sentence. The defendant is aware that Title 18, U.S.C.
§ 3742 affords a defendant the right to appeal the conviction and sentence imposed. By
entering into this agreement, the defendant knowingly waives any right to appeal a sentence
imposed which is within the guideline range determined appropriate by the court. The
defendant also waives any right to challenge a sentence or otherwise attempt to modify or
change his sentence or manner in which it was determined in any collateral attack,
including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as
limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)] and a
motion brought under Title 18, U.S.C. § 3582(c)(2). In other words, the defendant
waives the right to appeal the sentence imposed in this case except to the extent, if any, the
court departs upwards from the applicable sentencing guideline range determined by the
court. However, if the United States exercises its right to appeal the sentence imposed as
authorized by Title 18, U.S.C. § 3742(b), the defendant is released from this waiver and
may appeal his sentence as authorized by Title 18, U.S.C. § 3742(a).

Plea Agreement ¶ 11. The scope of this waiver unambiguously includes the right to collaterally attack by

- 4 -

a Section 2255 motion any matter in connection with defendant's sentence.  In this case, except for the claims that counsel demanded that defendant plead guilty and that counsel did not consult defendant about an appeal, defendant's arguments do not challenge the validity of the plea or waiver, but rather focus solely on sentencing issues.  To the extent that defendant argues that at the time of the plea, counsel did not advise him of the correct burden of proof and standard for firearm enhancements under the United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(b)(1), his argument is merely a dressed-up sentencing objection.  Defendant has waived any claim based on alleged errors at sentencing.  Such a claim does not attack the validity of the plea or the waiver.  Accordingly, except for the claims that counsel demanded that defendant plead guilty and that counsel did not consult defendant about an appeal, defendant's claims fall within the scope of the waiver in the plea agreement.  See Cockerham, 237 F.3d at 1187.

      B.     Knowing And Voluntary Nature Of The Plea

      To ascertain whether defendant knowingly and voluntarily waived his rights, the Court evaluates the language of the plea agreement and the Court's standard Rule 11 colloquy which it followed with defendant.[2]  Hahn, 359 F.3d at 1325.  The Court conducted a thorough inquiry at the plea hearing.  At that time defendant affirmed that he understood the charge against him, the maximum penalties, the rights he was

---

[2]      Defendant argues that his plea was not voluntary because counsel did not advise him of Bailey v. United States, 516 U.S. 137 (1995), which sets forth limitations on convictions for using or carrying a firearm during the commission of a drug trafficking offense.  See Memorandum Of Law (Doc. #78) at 3-4.  Defendant's argument is frivolous.  Bailey modified only the interpretation of the term "use" as applied to firearm convictions under 18 U.S.C. § 924(c).  See United States v. Hallum, 103 F.3d 87, 89 (10th Cir. 1996), cert. denied, 520 U.S. 1218 (1997), disagreed with on other grounds, United States v. Pena-Sarabia, 297 F.3d 983 (10th Cir. 2002).  Bailey does not affect the burden of proof or standard for firearm enhancements under U.S.S.G. § 2D1.1(b)(1).  See United States v. Guzman-Otero, 4 Fed. Appx. 562, 565 n.4 (10th Cir. May 15, 2000).

waiving, and the factual basis for his plea. Defendant acknowledged that his plea was free and voluntary, that no one had forced or threatened him to enter it, and that the only reason he was making a plea was that he was in fact guilty as charged. The plea agreement explicitly reflects that defendant "knowingly and voluntarily waives any right to . . . collaterally attack any matter in connection with this prosecution and sentence" and "waives any right to challenge a sentence or otherwise attempt to modify or change his sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28 U.S.C. § 2255." Plea Agreement ¶ 11. Nothing in the record suggests that defendant's plea or waiver of post-conviction rights was unknowing or involuntary.[3] The last paragraph of the plea agreement acknowledges that defendant had sufficient time to discuss the matter with his attorney, that he was satisfied with his attorney's representation, and that he had read and understood the plea agreement. Defendant also acknowledged that he was entering the agreement and pleading guilty because he was guilty and was doing so freely and voluntarily. See Plea Agreement ¶ 16. In sum, the language of the plea agreement and the Rule 11 colloquy established that defendant's waiver of his rights was knowing and voluntary.[4]

---

[3]        Defendant's claim that counsel demanded that defendant plead guilty because he had a scheduled vacation is unsupported by the record. The written plea agreement and the plea colloquy affirmed under oath that defendant had discussed the plea agreement with counsel, that no one forced or threatened him to plead guilty, that no promises were made to induce him to plead guilty and that defendant was fully satisfied with the advice and representation of counsel. Absent a believable reason justifying departure from their apparent truth, the accuracy and truth of an accused's statement at a Rule 11 proceeding at which his plea is accepted are conclusively established. United States v. Glass, 66 Fed. Appx. 808, 810 (10th Cir. June 3, 2003); United States v. Jones, 124 F.3d 218, 1997 WL 580493, at *1 (10th Cir. Sept. 19, 1997); United States v. Bambulas, 571 F.2d 525, 526 (10th Cir. 1978). Defendant's conclusory statement that counsel had a scheduled vacation is insufficient.

[4]        As noted above, to the extent defendant argues that his plea was involuntary because
(continued...)

C.     Miscarriage Of Justice

Finally, the Court must "determine whether enforcing the waiver will result in a miscarriage of justice." Hahn, 359 F.3d at 1327.  This test is met only if (1) the district court relied on an impermissible factor such as race; (2) defendant received ineffective assistance of counsel in conjunction with negotiation of the waiver; (3) the sentence exceeds the statutory maximum; or (4) the waiver is otherwise unlawful in the sense that it suffers from error that seriously affects the fairness, integrity, or public reputation of judicial proceedings.  Id.  Defendant bears the burden of demonstrating that the waiver results in a miscarriage of justice.  Anderson, 374 F.3d at 959.  Here, defendant does not contend that enforcing the waiver would result in a miscarriage of justice.

The Court finds that enforcement of the waiver does not implicate any of the four factors listed above.  In particular, defendant received a sentence of 100 months in prison which is significantly less than the statutory maximum of 20 years.  See United States v. Green, 405 F.3d 1180, 1193-94 (10th Cir. 2005); United States v. Porter, 405 F.3d 1136, 1144 (10th Cir. 2005) ("statutory maximum" under Hahn

---

[4](...continued)
counsel did not advise him of the correct burden of proof and standard for firearm enhancements under U.S.S.G. § 2D1.1(b)(1), his argument is merely a dressed-up sentencing objection.  In addition, counsel could not have advised defendant of Blakely and United States v. Booker, 125 S. Ct. 738 (2005), because the Supreme Court had not decided those cases.  Under defendant's theory, nearly every defendant who entered a plea before Blakely entered it unknowingly.  At most, counsel could have advised defendant that based on Apprendi v. New Jersey, 530 U.S. 466 (2000), he could argue that the government must prove beyond a reasonable doubt any facts supporting sentencing enhancements.  Of course, counsel likely would have also advised defendant that the Court would reject such an argument.  Before Blakely, every federal court of appeals had held that Apprendi did not apply to guideline calculations made within the statutory maximum.  Simpson v. United States, 376 F.3d 679, 681 (7th Cir. 2004).  Defendant's plea was not involuntary and unknowing simply because counsel failed to anticipate Blakely and advise defendant of its consequences before he entered a plea.

inquiry refers to statute of conviction), petition for cert. filed, No. 05-5571 (July 28, 2005). Furthermore, the enforcement of the waiver to collateral challenges does not seriously affect the fairness, integrity, or public reputation of the proceedings. See United States v. Maldonado, 410 F.3d 1231, 1233-34 (10th Cir. 2005) (waiver of appellate rights enforced where sentence did not exceed statutory maximum and was based on judge-made findings). The Court finds that enforcing the waiver will not result in a miscarriage of justice. In sum, except for defendant's claims that counsel demanded that defendant plead guilty and that counsel failed to consult defendant about an appeal, all of defendant's claims are barred by the waiver of collateral challenges in the plea agreement.

## II.      Procedural Bar - Failure To Appeal

Defendant's claims that the Court erred at sentencing also are procedurally barred because he failed to raise these on direct appeal. "[Section] 2255 is not available to test the legality of matters which should have been raised on appeal." United States v. Allen, 16 F.3d 377, 378 (10th Cir. 1994) (quoting United States v. Walling, 982 F.2d 447, 448 (10th Cir. 1992)). Defendant is precluded from raising in a Section 2255 petition issues which were not raised on direct appeal "unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." Allen, 16 F.3d at 378. Defendant has not satisfied any of these exceptions.

To the extent defendant contends that he did not raise his Blakely claim at sentencing or on direct appeal because of a lack of precedent, the Court finds that such an explanation does not constitute "cause" for his procedural default. The Court agrees substantially with the reasoning of the Seventh Circuit with respect to a similar claim under Apprendi:

> . . . the lack of precedent for a position differs from "cause" for failing to make a legal
> argument.  Indeed, even when the law is against a contention, a litigant must make the
> argument to preserve it for later consideration.  See Bousley v. United States, 523 U.S.
> 614, 622-24 (1998); Engle [v. Isaac], 456 U.S. [107,] 130 n.35 [(1982)] (that a legal
> argument would have been unpersuasive to a given court does not constitute "cause" for
> failing to present that argument).  "Cause" means some impediment, and Smith does not
> contend that any outside force impeded his legal defense in 1992.  (Nor does he contend
> that counsel was ineffective for failure to anticipate Apprendi; no such argument would be
> tenable.)  The lack of any reasonable legal basis for a claim may constitute "cause," see
> Reed v. Ross, 468 U.S. 1, 16 (1984), but the foundation for Apprendi was laid long
> before 1992.  Other defendants had been making Apprendi-like arguments ever since the
> Sentencing Guidelines came into being, and in McMillan v. Pennsylvania, 477 U.S. 79
> (1986), the Court addressed on the merits an argument along similar lines.  Smith could
> have invoked the themes in McMillan, and for that matter In re Winship, 397 U.S. 358
> (1970), just as the Justices themselves did in Apprendi.  See Garrott v. United States, No.
> 99-2921, [238 F.3d 903] (7th Cir. Jan. 30, 2001).  Thus Smith has not established cause;
> and for the same reason that he could not show plain error (if that were the right standard)
> he cannot show prejudice either.

United States v. Smith, 241 F.3d 546, 548-49 (7th Cir. 2001); see McCoy v. United States, 266 F.3d

1245, 1258-59 (11th Cir. 2001), cert. denied, 536 U.S. 906 (2002); United States v. Sanders, 247 F.3d

139, 145-46 (4th Cir.), cert. denied, 534 U.S. 1032 (2001).  Likewise, the Tenth Circuit has held that

counsel's failure to recognize a potential legal argument does not constitute cause for a procedural default.

United States v. Harms, 371 F.3d 1208, 1212 (10th Cir. 2004); see Hopkinson v. Shillinger, 954 F.2d

609, 610 (10th Cir. 1992).

Defendant also has not demonstrated "prejudice," i.e. that the alleged error "worked to his actual

and substantial disadvantage, infecting his entire [sentence] with error of constitutional dimensions."  United

States v. Frady, 456 U.S. 152, 170 (1982).  Defendant has not alleged or shown that the failure to let the

jury decide whether the firearm enhancement applied worked to his actual and substantial disadvantage.

Finally, defendant has not satisfied the exception for a "fundamental miscarriage of justice."  The

Supreme Court has held that this exception applies only if one is actually innocent. See Bousley, 523 U.S. at 623. Initially, the Court doubts that the actual innocence exception can be applied to noncapital sentences. See United States v. Richards, 5 F.3d 1369, 1371 (10th Cir. 1993); see also United States v. Glover, 156 F.3d 1244, 1998 WL 476779, at *2 (10th Cir. Aug. 11, 1998) (claim that defendant in noncapital case should have received lesser sentence does not constitute claim that he is actually innocent or did not commit crime). But cf. Selsor v. Kaiser, 22 F.3d 1029, 1036 (10th Cir. 1994) (actual innocence exception might apply where petitioner shows actual innocence of sentencing element that was not required for proof of underlying conviction). In any event, defendant has not shown that he is actually innocent of the charges which are the basis of the sentence enhancements. Defendant cannot show that no reasonable jury would have reached the same conclusion as the sentencing judge. Therefore, he cannot establish that failure to review his claim would result in a fundamental miscarriage of justice.

Based on this procedural bar, defendant's arguments that the Court erred at sentencing by applying the firearm enhancement and miscalculating his criminal history are overruled.

## III.    Defendant's Sentence

Defendant maintains that the Court erred at sentencing by applying the firearm enhancement and miscalculating his criminal history. In addition to the procedural bars discussed above, defendant's arguments lack substantive merit.

### A.    Firearm Enhancement

Defendant maintains that his sentence must be modified because the firearm enhancement was not charged in the indictment or submitted to a jury in violation of Blakely. The Tenth Circuit has held that neither Blakely nor Booker announced a new rule of constitutional law made retroactive by the Supreme

Court on collateral review.  United States v. Van Kirk, 2005 WL 1706978, at *1 (10th Cir. July 22, 2005); see United States v. Bellamy, No. 04-5145, 2005 WL 1406176, at *3 (10th Cir. June 16, 2005) (Booker does not apply retroactively to initial habeas petitions); United States v. Price, 400 F.3d 844, 849 (10th Cir. 2005) (Blakely does not apply retroactively to convictions already final as of June 24, 2004); see also United States v. Mora, 293 F.3d 1213, 1219 (10th Cir. 2002) (Apprendi not watershed decision and hence not retroactively applicable to initial habeas petitions).  Accordingly, a defendant whose conviction was final when the Supreme Court decided Blakely on June 24, 2004 cannot obtain relief based on that decision under Section 2255.

B.    Criminal History Category

Defendant apparently argues that under Blakely and Booker, the government must charge in an indictment or prove to a jury certain facts related to prior convictions such as that the instant offense was committed while he was on parole and within two years of his release from custody on the prior offenses. The Tenth Circuit has specifically rejected this argument. In Almendarez-Torres v. United States, 523 U.S. 224 (1998), the Supreme Court created an explicit exception to Apprendi and its progeny by allowing a judge to determine a fact of prior conviction without violating a defendant's Sixth Amendment rights. United States v. Taylor, 413 F.3d 1146, 1158 n.5 (10th Cir. 2005).  In Almendarez-Torres, the Supreme Court held that because recidivism "is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence," 523 U.S. at 243, and "as typical a sentencing factor as one might imagine," 523 U.S. at 230, the Constitution does not require the government to charge or prove to a jury either the existence of prior convictions or certain facts related to those convictions such as their classification as "violent felonies."  United States v. Moore, 401 F.3d 1220, 1221 (10th Cir. 2005); see

United States v. Pineda-Rodriguez, 133 Fed. Appx. 455, 457-58 (10th Cir. May 4, 2005).

A district court's determination of the "fact of a prior conviction," for purposes of Apprendi, Blakely and Booker implicitly entails many subsidiary findings. Pineda-Rodriguez, 133 Fed. Appx. at 458 (citing United States v. Santiago, 268 F.3d 151, 156 (2d Cir. 2001), cert. denied, 535 U.S. 1070 (2002)). The Tenth Circuit has noted:

> [A]mong those "subsidiary findings" are such things as the duration of a term of court supervision following a prior conviction, or the date the defendant was released from custody following a prior conviction. Like the "fact" of a conviction itself, those ancillary "facts" are merely aspects of the defendant's recidivist potential, they are easily verified, and their application for purposes of enhancing a sentence under USSG § 4A1.1 requires nothing more than official records, a calendar, and the most self-evident mathematical computation.

Pineda-Rodriguez, 133 Fed. Appx. at 458.  Under Almendarez-Torres, a district court can make findings with respect to a defendant's criminal history, be they findings as to the fact of the prior convictions or the nature of those convictions.   United States v. Williams, 410 F.3d 397, 402 (7th Cir. 2005); see Pineda-Rodriguez, 133 Fed. Appx. at 458-59.

Defendant also argues that Shepard v. United States, 125 S. Ct. 1254 (2005), restricts the information a court can consider in determining a defendant's criminal history category.  Shepard explained the Supreme Court's earlier decision in Taylor v. United States, 495 U.S. 575 (1990), which held that when a court determines whether a crime constitutes a violent felony under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), the Sixth Amendment requires it to take "a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." Taylor, 413 F.3d at 1157-58 (quoting Taylor, 495 U.S. at 600.  Shepard held that "Taylor's reasoning controls the identification of . . . convictions following pleas, as well as convictions on verdicts."

Shepard, 125 S. Ct. at 1259.  Accordingly, when determining whether a prior conviction resulting from a guilty plea is a violent felony for purposes of the ACCA, a court is limited to the language of the statute of conviction, "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant . . ., or to some comparable judicial record of this information."  Id. at 1262.

Defendant maintains that Shepard suggests that Almendarez-Torres is no longer good law.[5]  In a concurring opinion in Shepard, Justice Thomas noted that Almendarez-Torres "has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that Almendarez-Torres was wrongly decided."  Shepard, 125 S. Ct. at 1263.  He urged that "in an appropriate case, this Court should consider Almendarez-Torres' continuing viability."  Shepard, 125 S. Ct. at 1263.  Despite Justice Thomas' statements, the Court is bound to continue to follow Almendarez-Torres.  See Moore, 401 F.3d at 1224.  The Tenth Circuit has held that Shepard, Booker, Blakely and Apprendi have left undisturbed the holding of Almendarez-Torres.  See Williams, 410 F.3d at 402; Moore, 401 F.3d at 1221, 1224; Pineda-Rodriguez, 133 Fed. Appx. at 458 n.5.  As explained above, under Almendarez-Torres, a district court can make findings with respect to a defendant's criminal history, be they findings as to the fact of his prior convictions or the nature of those convictions.  Williams, 410 F.3d at 402.  The Court therefore did not err by calculating defendant's criminal history category based on his prior convictions.[6]

---

[5]     Defendant apparently concedes that Shepard does not apply directly because the Court did not enhance his sentence under the ACCA.

[6]     Even if the Court erred, any such error was far from plain because the law at the time of sentencing (and now) does not specify whether the "fact of a prior conviction" includes such administrative ancillary details as the date of any court supervision following it or the length of sentence imposed.  See Pineda-Rodriguez, 133 Fed. Appx. at 458-59.

## IV.   Ineffective Assistance Of Counsel At Sentencing

To establish ineffective assistance of counsel, defendant must show that (1) the performance of counsel was deficient and (2) the deficient performance was so prejudicial that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687, 694 (1984).  To meet the first element, i.e. counsel's deficient performance, defendant must establish that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.  In other words, defendant must prove that counsel's performance was "below an objective standard of reasonableness." Walling, 982 F.2d at 449.  The Supreme Court recognizes, however, "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; see United States v. Rantz, 862 F.2d 808, 810 (10th Cir. 1988) (citation omitted), cert. denied, 489 U.S. 1089 (1989).  As to the second element, the Court must focus on the question "whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

Defendant argues that his counsel was ineffective at sentencing because (1) he did not object to the government's failure to establish beyond a reasonable doubt that he used a firearm in the commission of a drug offense; (2) he did not object to the firearm enhancement in the Presentence Investigation Report ("PSIR"); and (3) he did not object to the Court's calculation of his criminal history category.  For reasons explained above, these arguments are barred under the plea agreement.  Furthermore, the arguments lack substantive merit.

A.      Objections Under *Booker* And *Blakely*

Defendant argues that counsel was ineffective at sentencing because he did not object to the evidentiary standard used for the firearm enhancement.  The Tenth Circuit has held that counsel's failure to anticipate Blakely and Booker based on the earlier Apprendi decision is not objectively unreasonable. See United States v. Carew, No. 05-3059, 2005 WL 1526136 (10th Cir. June 29, 2005); see also United States v. Gonzalez-Huerta, 403 F.3d 727, 750 (10th Cir. 2005) (Briscoe, J. concurring and dissenting) (no one could have predicted absolute sea-change in federal sentencing that would ultimately be wrought by Booker); cf. Harms, 371 F.3d at 1212 (counsel's failure to recognize potential legal argument does not constitute cause for procedural default).  The Court therefore finds that counsel's performance was not deficient for failing to object to the evidentiary standard which the Court applied.[7]

B.      Objection To The Firearm Enhancement

Defendant argues that counsel was ineffective for failing to object to the firearm enhancement in the PSIR.  In particular, defendant maintains that to support the firearm enhancement under U.S.S.G. § 2D1.1(b)(1), the government had to show that he knew to a "practical certainty" that Tidwell was going to use the firearm during the commission of a drug trafficking crime.  See Memorandum Of Law (Doc. #78) at 10.  Defendant argues that the government could not satisfy its burden of proof by showing that use of the firearm was merely reasonably foreseeable.[8]  See id.

---

[7]      Even if counsel's performance was deficient for failing to anticipate Blakely and Booker, defendant has not shown that he suffered any prejudice.

[8]      Defendant apparently assumes that for the enhancement to apply, the government must prove that defendant used the firearm in the commission of a drug offense as explained in Bailey v. United States, 516 U.S. 137 (1995).  Defendant has confused the standards for a conviction under 18 U.S.C. § 924(c), which Bailey addresses, and the standards for an enhancement under U.S.S.G.

(continued...)

Defendant has significantly overstated the government's burden under Section 2D1.1(b)(1).  That section, which applies to the "unlawful manufacturing, importing, exporting, or trafficking" of drugs, directs a sentencing court to increase a defendant's base offense level by two levels "[i]f a dangerous weapon (including a firearm) was possessed."  The Sentencing Guidelines provide that "[t]he enhancement for weapon possession should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  U.S.S.G. § 2D1.1, Application Note 3.  The government bears the initial burden of proving possession of a weapon by a preponderance of the evidence.  United States v. Pompey, 264 F.3d 1176, 1180 (10th Cir. 2001); United States v. Smith, 131 F.3d 1392, 1400 (10th Cir. 1997), cert. denied, 522 U.S. 1141 (1998); United States v. Roberts, 980 F.2d 645, 647 (10th Cir. 1992).  The government can satisfy this burden by demonstrating "that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant."  Pompey, 264 F.3d at 1180; United States v. Roederer, 11 F.3d 973, 982 (10th Cir. 1993); see Roberts, 980 F.2d at 647.  Thus, "mere proximity to the offense" may satisfy the government's initial burden.  United States v. Vaziri, 164 F.3d 556, 568 (10th Cir. 1999); Smith, 131 F.3d at 1400.  If the government satisfies its initial burden, the burden shifts to defendant to show "that it is clearly improbable the weapon was connected with the offense."  Pompey, 264 F.3d at 1181; Vaziri, 164 F.3d at 568; Roberts, 980 F.2d at 647; see United States v. Dickerson, 195 F.3d 1183, 1188 (10th Cir. 1999).

Based on the PSIR, the government had ample evidence to satisfy its burden.  The PSIR reflects that two handguns were seized from defendant's residence at the time of the instant offense and that Tidwell

_____

[8](...continued)

§ 2D1.1(b)(1).  "Use" of a firearm is not required to support the firearm enhancement under U.S.S.G. § 2D1.1.  As explained below, the enhancement applies if the weapon is present and mere proximity of the firearm to the offense is sufficient.

stated that he and Ellis jointly owned one of the handguns.  See PSIR ¶¶ 20, 26, 33.  Defendant does not

deny that two handguns were seized from the residence which he maintained for the distribution of

methamphetamine.  Such evidence is sufficient to show a temporal and spatial relation between defendant,

the handguns and the drug trafficking activity.  See Pompey, 264 F.3d at 1180; Roederer, 11 F.3d at 982;

Roberts, 980 F.2d at 647; see also United States v. Topete-Plascencia, 351 F.3d 454, 458 (10th Cir.

2003) (government not required to prove actual possession of gun); Dickerson, 195 F.3d at 1188

(enhancement appropriate where firearms and drugs both located inside house which defendant, through

guilty plea, acknowledged he possessed and allowed others to use for drug trafficking activities); United

States v. Flores, 149 F.3d 1272, 1280 (10th Cir. 1998) (nexus established by proof that weapon was

located nearby general location where drugs or drug paraphernalia were stored), cert. denied, 525 U.S.

1092 (1999); Smith, 131 F.3d at 1400 (personal possession not required; enhancement appropriate if

possession by co-defendant known to defendant or reasonably foreseeable to him); Roederer, 11 F.3d

at 983 (nexus established by proof that weapon was located nearby general location where drugs or drug

paraphernalia were stored).  In Dickerson, the Tenth Circuit noted that "because [defendant's] guilty plea

effectively indicated his entire house was used for drug trafficking activities, the presence of the firearms

inside the house was sufficient to establish possession for purposes of § 2D1.1(b)(1)."  Dickerson, 195

F.3d at 1188; see id. (defendant accountable for reasonably foreseeable activities engaged in by parties

using his house for drug trafficking activities, including possession of firearms); United States v. Banks, 987

F.2d 463, 468 (7th Cir. 1993) (possession of firearm in drug transaction is reasonably foreseeable).

Defendant has not shown – either at the time of sentencing or in the instant motion – that it was "clearly

improbable" that the firearms seized from his residence were connected to the offense.[9]  Accordingly, counsel was not deficient in failing to raise this objection to the PSIR.

Even if counsel should have objected to the PSIR, defendant has not shown how counsel's performance was prejudicial.  As explained above, defendant has not specifically challenged the fact that law enforcement officers found two handguns in the residence which he maintained for the distribution of methamphetamine.[10]  Defendant also has not explained how it was "clearly improbable" that these weapons were connected to the offense.  The Court therefore finds that counsel's failure to object to the weapon enhancement in the PSIR was not prejudicial.

Defendant apparently claims that he is actually innocent of possessing a firearm.  "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  Bousley v. United States, 523 U.S. 614, 623 (1998) (internal quotation marks omitted).  Furthermore, in this context, "'actual innocence' means factual innocence, not mere legal insufficiency."  Id.  As explained above, based on the PSIR and defendant's

_____

[9]      Defendant also argues that counsel should have argued that the burden shifting framework of U.S.S.G. § 2D1.1(b)(1) violates his right to due process.  The Tenth Circuit has rejected such an argument.  See United States v. Roberts, 980 F.2d 645, 648 n.3 (10th Cir. 1992).  The rule of Mullaney v. Wilbur, 421 U.S. 684 (1975), which prohibits burden shifting of a substantive element of an offense, is inapplicable to sentencing determinations under § 2D1.1(b)(1).  See Roberts, 980 F.2d at 648 n.3 (citing United States v. McGhee, 882 F.2d 1095, 1097-99 (6th Cir. 1989)); see also United States v. Restrepo, 884 F.2d 1294, 1296 (9th Cir. 1989) ("clearly improbable" language is "exception" to enhancement imposed after government proves that firearm was possessed).

[10]      In his brief, defendant concedes that Tidwell, who was involved in the distribution of narcotics from defendant's residence, owned the firearm.  See Memorandum Of Law (Doc. #78) at 10; see also Motion To Vacate (Doc. #77) at 5 (defendant's roommate and another individual were apprehended in crawl space of residence and possessed methamphetamine and firearm).

admission that he maintained a residence for the distribution of methamphetamine, defendant has not shown actual innocence.  See Carew, 2005 WL 1526136, at *3.

C.      Objection To Calculation Of Criminal History Category

Defendant argues that his counsel was ineffective at sentencing because he did not object because the Court – rather than a jury – calculated his criminal history category.  As explained above, under Almendarez-Torres, a district court can make findings with respect to a defendant's criminal history, be they findings as to the fact of his prior convictions or the nature of those convictions.  Williams, 410 F.3d at 402.  Therefore, counsel's failure to object to the Court's calculation of defendant's criminal history category was neither deficient nor prejudicial.

**V.      Ineffective Assistance Of Counsel During Plea Negotiations**

Defendant argues that counsel was ineffective during plea negotiations because (1) he demanded that defendant plead guilty so that he could go on a scheduled vacation and (2) he did not advise defendant of the correct standard of proof for sentencing enhancements.  Based on the plea petition, the plea agreement and the plea hearing, defendant's claim that counsel demanded that he plead guilty is without merit.  See Bambulas, 571 F.2d at 526 (defendant's sworn statements connected to plea presumed accurate absent believable reason justifying departure from apparent truthfulness).  Even if counsel demanded that defendant plead guilty, defendant has not shown that but for counsel's demand, he would have maintained his innocence and gone to trial.  Indeed, defendant concedes that he is guilty of maintaining a place for the distribution of methamphetamine, see Memorandum Of Law (Doc. #78) at 13, and asks the Court to enforce that portion of the plea agreement without applying a firearm enhancement and using the lowest criminal history category.  Because defendant admits that he is guilty of the offense to which he

pled guilty, and that he wants the Court to enforce that particular admission of guilt, he cannot show that counsel's "demand" that he plead guilty was prejudicial.

Defendant's claim that counsel did not advise him of the correct standard of proof for sentencing enhancements is also without merit. As stated, the Tenth Circuit has held that counsel's failure to anticipate Blakely and Booker, based on Apprendi, is not objectively unreasonable. See supra text part IV.A. Counsel's failure to advise defendant of a possible Apprendi argument was not deficient. In addition, because every federal court of appeals had held that Apprendi did not apply to guideline calculations within the statutory maximum, Simpson, 376 F.3d at 681, counsel's failure to advise defendant of this potential argument was not prejudicial.

## VI.    Ineffective Assistance Of Counsel Regarding An Appeal

Defendant argues that counsel was ineffective because he did not file a notice of appeal or inform defendant of his appeal rights. In Roe v. Flores-Ortega, 528 U.S. 470 (2000), the Supreme Court rejected a bright-line rule that failure of counsel to consult with defendant regarding an appeal is *per se* deficient. Id. at 480. Instead, counsel must consult defendant about an appeal if counsel has "reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. In evaluating this type of claim, the Court must take into account all information which counsel knew or should have known. Id. Though not determinative, the Court must also consider the highly relevant factor whether the potential appeal followed a plea or a verdict "both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Id. When defendant pleads guilty, the Court must

also consider such factors as whether defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Id. In addition to deficient performance, defendant must show that counsel's failure to consult with him about an appeal was prejudicial. To show prejudice in these circumstances, defendant must show a reasonable probability that but for counsel's failure to consult with him about an appeal, he would have timely appealed. Id. at 484.

Based on the record, the Court finds that counsel's alleged failure to consult defendant about an appeal was neither deficient nor prejudicial. First, defendant's conviction was the result of a guilty plea, and his actual sentence (100 months) was significantly less than the statutory maximum (20 years) about which he was informed at the change of plea hearing. Defendant did not enter a conditional plea and he expressly agreed that he would not be permitted to withdraw his plea if he did not agree with the sentence which the Court imposed. Second, in the plea agreement, defendant waived his right to appeal or collaterally attack his sentence, thus indicating that he sought an end to judicial proceedings. Third, at sentencing, the Court fully informed defendant of his rights to appeal his conviction and sentence. Fourth, defendant has not alleged or shown that he expressed to counsel any interest in appealing his conviction or sentence. Based on these facts, reasonable counsel would believe that defendant did not have any non-frivolous issues to appeal and that defendant did not desire to appeal. Therefore, counsel was not deficient in failing to consult defendant about a possible appeal. See United States v. Flowers, No. 03-3051-SAC, 2004 WL 1088767, at *8 (D. Kan. 2004).

Even if counsel was deficient in not consulting defendant about a possible appeal, defendant has not shown a reasonable probability of an appeal being filed but for his counsel's deficient performance.[11]

---

[11]     Defendant argues that the Court should presume prejudice because counsel did not file an
(continued...)

Defendant has not identified and the Court cannot find any non-frivolous grounds on which he could appeal in light of the waiver in the plea agreement and defendant's failure to object at sentencing to the firearm enhancement or his criminal history category. Defendant was fully informed at his change of plea hearing and at his sentencing of his right to appeal. Defendant received a sentence at the low end of the applicable guideline range. Defendant has not shown a reasonable probability that he would have filed a notice of appeal had his counsel consulted with him. <u>Flowers</u>, 2004 WL 1088767, at *8.

**VII. Conclusion**

The files and records in this case conclusively show that defendant is not entitled to relief. Accordingly, no evidentiary hearing or response by the government is required. <u>See</u> <u>United States v. Marr</u>, 856 F.2d 1471, 1472 (10th Cir. 1988) (no hearing required where factual matters raised by Section 2255 petition may be resolved on record).

**IT IS THEREFORE ORDERED** that defendant's <u>Motion To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody</u> (Doc. #77) filed May 13, 2005 be and hereby is **OVERRULED**.

Dated this 23rd day of August, 2005, at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge

---

[11](...continued)
appeal. <u>See</u> Memorandum Of Law (Doc. #78) at 17. That presumption, however, only applies where counsel disregards a defendant's specific instructions to file an appeal. <u>See</u> <u>Roe</u>, 528 U.S. at 477, 484-85; <u>United States v. Snitz</u>, 342 F.3d 1154, 1155-56 (10th Cir. 2003). Here, defendant does not allege that he asked counsel to file an appeal, but rather that counsel did not consult with him about the possibility of an appeal. <u>See</u> Motion To Vacate (Doc. #77) at 5; Memorandum Of Law (Doc. #78) at 14-17.